**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

BUCKEYE STATE MUTUAL
INSURANCE COMPANY,

Plaintiff,

vs.

BRENT MOENS, TANYA DEE
MOENS, ESTATE OF GERALD RALPH
BOGE a/k/a JERALD RALPH BOGE,
DOUGLAS LEE OLDENKAMP,
BRAEDEN JAY BAILEY, DANIEL
BAILEY, TRACEY BAILEY, LEE RAE
GEISINGER, Individually,
CONSERVATORSHIP OF LEE RAE
GEISINGER, ALICE MARIE
GEISINGER, Individually,
CONSERVATORSHIP OF ALLICE
CONDIT a/k/a ALICE MARIE
GEISINGER, WELLMARK, INC.,
UNITED FIRE GROUP, INC., CAN
CLAIMPLUS, INC., and AMERICAN
ZURICH INSURANCE CO.,

Defendants.

No. C12-4025-MWB


**MEMORANDUM OPINION AND**
**ORDER REGARDING CROSS**
**MOTIONS FOR SUMMARY**
**JUDGMENT**

_____

**TABLE OF CONTENTS**

**I.  INTRODUCTION AND BACKGROUND**............................................... 2
    A.  *Factual Background* ........................................................... 2
    B.  *Procedural background*....................................................... 7

**II. LEGAL ANALYSIS** ..................................................................... 8
    A.  *Summary Judgment Standards*.............................................. 8
    B.  *Interpretation Of The Policy* ............................................... 11
        1.  *General rules of insurance contract interpretation* ............... 11

      2.     *Is the Policy ambiguous?* ................................................ *14*

III.   *CONCLUSION* ...................................................................... *20*

In this declaratory judgment action, I must decide whether an automotive passenger, who is a covered person under the terms of an automobile insurance policy covering the host automobile, and who is injured in an automobile accident, may recover underinsurance benefits under the insurance policy covering the host automobile, when that passenger is entitled to receive liability coverage benefits under that same policy.

## I.    INTRODUCTION AND BACKGROUND

### A.    Factual Background

The parties have stipulated that the facts recited here are undisputed, at least for the purposes of summary judgment. Buckeye State Mutual Insurance Company ("Buckeye") issued personal automobile policy #PA080002377 ("the Policy") to Brent Moens and Tanya Dee Moens. The Policy's bodily injury limits are $250,000 for each person and $500,000 for each accident. The Policy covered the period from September 15, 2009, to September 15, 2010.

The Policy provides underinsured motorist coverage and states:

> We will pay compensatory damages which an "insured" is
> legally entitled to recover from the owner or operator of an

"underinsured motor vehicle" because of "bodily injury" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

Insurance Policy at 10; Defendants' App. at 15. The Policy contains the following pertinent definitions:

"Insured" as used in this endorsement means:

1.     You or any "family member".

2.     Any other person "occupying" "your covered auto".

3.     Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

C.     "Underinsured motor vehicle" means a land motor or trailer of any type to which a bodily injury liability bond or policy limit applies at the time of the accident but its limit for bodily injury liability is either:

1.     Not enough to pay the full amount the "insured" is legally entitled to recover as damages; or

2.     Reduced by payments to others injured in the accident to an amount which is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1.     To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability

3

specified by the financial responsibility laws of Iowa.

2. Owned by or furnished or available for the regular use of you or any "family member".

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not upon public roads.

6. While located for use as a residence or premises.

7. Owned or operated by a person qualifying as a self-insurer under any applicable motor vehicle law.

8. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

 a. Denies coverage; or

 b. is or becomes insolvent.

Insurance Policy at 10; Defendants' App. at 15.

The Policy's underinsured motorist section also includes the following "exclusions" provision:

We do not provide Underinsured Motorist Coverage for "bodily injury" sustained by an "insured":

1. While "occupying", or when struck by, any motor vehicle owned by you which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This

4

Exclusion (A.2.) does not apply to a share-the-expense car pool.

3.  Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

B.  This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1.  Workers' compensation law; or

2.  Disability benefits law.

C.  We do not provide Underinsured Motorist Coverage for punitive or exemplary damages.

Insurance Policy at 10-11; Defendants' App. at 15-16.

The Policy further has a "limit of liability" provision which states:

A.  The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorist Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Schedule or in the Declarations; or

4.  Vehicles involved in the accident.

5

B.    No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

C.    We will not make duplicative payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D.    We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E.    We will reduce the "insured's" total damages by any amount available to that "insured", under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle", that such "insured" did not recover as a result of a settlement between that "insured" and the insurer of an "underinsured motor vehicle." However, any reduction of the "insured's" total damages will not reduce the limit of liability of this coverage.

This Paragraph (E.) shall not apply if we advance payment to the "insured" in an amount equal to the tentative settlement with the insurer of the "underinsured motor vehicle".

Insurance Policy at 11; Defendants' App. at 15.

The Policy covered a 2000 Dodge Durango which, on August 11, 2010, was being driven by Cole Moens, Brent and Tanya's minor son. On that date, while driving the Durango, Cole was involved in a four vehicle accident at the intersection of Highway 71 and C25 in Buena Vista County, Iowa. Cole received citations for failure to yield upon entering through a highway and violation of a minor's school license. After a trial, Cole was found guilty of both charges.

6

Cole was the sole negligent party and his negligence was the sole substantial factor resulting in damage to the following:

- Braeden Jay Bailey, a passenger in the Durango, and Daniel Bailey and Tracey Bailey's son; Daniel and Tracey's claims for loss of consortium (collectively "the Baileys");
- Gerald Ralph Boge a/k/a Jerald Ralph Boge, n/k/a Estate of Boge, the driver of a semi-truck owned by Hog Slat, Inc.;
- Douglas Lee Oldenkamp, the driver of a semi-truck owned by GCC Alliance Concrete, Inc.;
- Lee Rae Geisinger and Alice Marie Geisinger, and their conservatorships, the driver and passenger, respectively of another vehicle involved in the accident.

The potential plaintiffs' demands exceed the liability limits of the Policy. The Baileys claim that their damages exceed the portion of the Moens' liability limits they may receive.

## B.    *Procedural background*

After investigating the accident, Buckeye found that the injuries sustained were likely to exceed what it considered to be the Policy's aggregate limit of $500,000. Realizing that individuals' claims would be in competition with each other, Buckeye found itself trapped between the proverbial rock and a hard place. Attempting to extricate itself from this difficult position, Buckeye brought the present interpleader action on July 24, 2012, pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil procedure 22, by which it seeks to serve as a mere stakeholder, depositing $500,000 with the Clerk of Court to permit the resolution of the competing claims, and requesting a declaratory judgment of the rights of each claimant against the Policy. The Baileys

moved for partial summary judgment, contending that the Policy provides both liability and underinsured motorist coverage to Braeden, based on his status as a passenger in the Durango. Buckeye resisted the Baileys' motion and filed a cross motion for summary judgment in which it contends that underinsured motorist coverage is not available to Braeden under the Policy for the accident. Specifically, Buckeye argues that Braeden is not entitled to underinsured motorist coverage because the Durango is expressly excluded from the Policy's definition of an "underinsured motor vehicle." Buckeye, alternatively, argues that the Policy clearly prohibits intra-policy stacking and therefore its liability under the Policy is limited to the $500,000 per accident cap.

The Baileys resisted Buckeye's motion. They argue that the Policy's exclusion is ambiguous and, therefore, unenforceable. The Baileys also contend that the Policy's anti-stacking provision is not at issue because there will be no duplication of benefits. Buckeye filed a timely reply in which it argues that the Policy's underinsured motorist provision unambiguously excluded the Durango from coverage. Buckeye also argues that the Policy's anti-stacking provision is applicable to Braeden's claim.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is

entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."

9

FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, –––U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530
>
> U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

Consequently, I turn to consider the parties' arguments for and against summary judgment.

## B. Interpretation Of The Policy

### 1. General rules of insurance contract interpretation

The crux of the disagreement centers on the appropriate construction and interpretation of the Policy. There is no dispute that Iowa law governs my interpretation of the Policy. Therefore, I begin my analysis by setting out some well-established rules of insurance contract interpretation. Under Iowa law,

> "The construction of an insurance policy is the process of determining the policy's legal effect; interpretation is the process of determining the meaning of the words used in the policy. 'When the parties offer no extrinsic evidence on the meaning of policy language, the interpretation and construction of an insurance policy are questions of law for the court.'"

*Nationwide Agri-Business Ins. Co. v. Goodwin*, 782 N.W.2d 465, 470 (Iowa 2010) (quoting *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008) (quoting in turn *Lee v. Grinnell Mut. Reinsurance Co.*, 646 N.W.2d 403, 406 (Iowa 2002)).

"The cardinal rule of construing insurance policies is that except in cases of ambiguity, the intent of the parties must control, and the court determines the intent of the parties by looking at what the policy itself says." *Boelman v. Grinnell Mut. Reinsurance Co.*, ___N.W.2d___, 2013 WL 387877, at *4 (Iowa Feb. 1, 2013); *see Nationwide Agri-Business Ins. Co. v. Goodwin*, 782 N.W.2d 465, 470 (Iowa 2010); *Thomas*, 749 N.W.2d at 682; *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). If the policy does not define a term, it is given "its ordinary meaning." *Postell v. American Family Mut. Ins. Co.*, 823 N.W.2d 35, 41

(Iowa 2012); *see Interstate Power Co. v. Insurance Co. of N. Am.*, 603 N.W.2d 751, 754 (Iowa 1999). When doing so, the court must "construe the policy as a whole." *Postell*, 823 N.W.2d at 41; *see Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 118 (Iowa 2007). Where a policy is ambiguous, a court must adopt "the construction most favorable to the insured." *Boelman*, ___N.W.2d___, 2013 WL 387877, at *5; *see Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 778 (Iowa 2000). A court applies the same rule where an exclusion is ambiguous, because "'[a]n insurer assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms.'" *Boelman*, ___N.W.2d___, 2013 WL 387877, at *5 (quoting *Thomas*, 749 N.W.2d at 682) (quoting in turn *Hornick v. Owners Ins. Co.*, 511 N.W.2d 370, 374 (Iowa 1993) (internal quotation marks omitted)); *see Postell*, 823 N.W.2d at 41. Thus, exclusions are strictly construed against the insurer, s*ee Boelman*, ___N.W.2d___, 2013 WL 387877, at *5; *Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 299 (Iowa 1994), "because insurance policies constitute adhesion contracts." *Boelman*, ___N.W.2d___, 2013 WL 387877, at *5; *see Postell,* 823 N.W.2d at 41-42; *Allied Mut. Ins. Co. v. Costello*, 557 N.W.2d 284, 286 (Iowa 1996). Finally, the Iowa Supreme Court has instructed that:

> When we construe the underinsured motorist provisions of an insurance policy, section 516A.2 forms a basic part of the policy and we treat section 516A.2 as if the parties had actually written it into the policy. *Rodish v. State Farm Mut. Auto. Ins. Co.*, 501 N.W.2d 514, 515 (Iowa 1993); *Veach*, 460 N.W.2d at 847; *Tri–State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 17 (Iowa 1985). We construe the insurance policy in light of the purposes and intent of section 516A.2. *Veach*, 460 N.W.2d at 847; *Tri–State*, 379 N.W.2d at 17.

*Mewes v. State Farm Auto. Ins. Co.*, 530 N.W.2d 718, 722 (Iowa 1995); *see Thomas*, 749 N.W.2d at 682; *Farm Bureau Mut. Ins. Co. v. Ries*, 551 N.W.2d 316, 318 (Iowa

12

1996).[1]  With these general rules of insurance contract interpretation in mind, I turn to the parties' arguments.

_____

[1]Section 516A.2 provides in relevant part:

> 1. a. Except with respect to a policy containing both underinsured motor vehicle coverage and uninsured or hit-and-run motor vehicle coverage, nothing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 11 of section 321A.1. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

> b. To the extent that *Hernandez v. Farmers Insurance Company*, 460 N.W.2d 842 (Iowa 1990), provided for interpolicy stacking of uninsured or underinsured coverages in contravention of specific contract or policy language, the general assembly declares such decision abrogated and declares that the enforcement of the antistacking provisions contained in a motor vehicle insurance policy does not frustrate the protection given to an insured under section 516A.1.

> . . . .

> 3. It is the intent of the general assembly that when more than one motor vehicle insurance policy is purchased by or on behalf of an injured insured and which provides uninsured, underinsured, or hit-and-run motor vehicle coverage to an insured injured in an accident, the injured insured is entitled to recover up to an amount equal to the highest single limit for uninsured, underinsured, or hit-and-

13

## 2. *Is the Policy ambiguous?*

The Baileys contend that the Policy's underinsured motorist provision is ambiguous. Specifically, the Baileys argue that the Policy's exclusion of any vehicle "[o]wned by or furnished or available for the regular use of you or any 'family member'" conflicts with the Policy's definition of an "underinsured motor vehicle" thereby creating an ambiguity that must be resolved in their favor. Buckeye counters that the Policy's underinsured motorist provision is clear and unambiguous.

Under Iowa law,

> "The test for ambiguity is an objective one: 'Is the language fairly susceptible to two interpretations?'" *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). "Only when the policy language is susceptible to two reasonable interpretations do we find an ambiguity." *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994).

*Goodwin*, 782 N.W.2d at 470. A mere disagreement between parties will not establish ambiguity. *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994). "Ambiguity exists if, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is a proper one." *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987) (citations and internal quotation omitted).

---

> run motor vehicle coverage under any one of the above described motor vehicle insurance policies insuring the injured person which amount shall be paid by the insurers according to any priority of coverage provisions contained in the policies insuring the injured person.

IOWA CODE § 516A.2.

14

[The Iowa Supreme Court] has held that an insurer assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms. Thus, when an exclusionary provision is fairly susceptible to two reasonable constructions, the construction most favorable to the insured will be adopted. Nonetheless, if there is no ambiguity, the court will not write a new contract of insurance for the parties. If exclusionary language is not defined in the policy, we give the words their ordinary meaning. An exclusion that is clear and unambiguous must be given effect.

*Goodwin*, 782 N.W.2d at 470 (internal citations and quotations omitted).

The Policy defines "Underinsured motor vehicle" to mean:

a land motor or trailer of any type to which a bodily injury liability bond or policy limit applies at the time of the accident but its limit for bodily injury liability is either:

1. Not enough to pay the full amount the "insured" is legally entitled to recover as damages; or

2. Reduced by payments to others injured in the accident to an amount which is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

. . .

2. Owned by or furnished or available for the regular use of you or any "family member".

Insurance Policy at 10; Defendants' App. at 15.

There is no dispute that the Durango in which Braeden was a passenger is owned by the Moens and was available for Cole's use. Thus, the Policy's terms exclude the Durango from the Policy's definition of an "underinsured motor vehicle." There is nothing ambiguous about this provision. The Baileys argue that "'[i]f a contract

15

promises something in one point and takes it away in another, there is a resultant ambiguity, and any ambiguity or doubt as to meaning is construed against the insurance company.'" Baileys' Response at 4 (quoting *Murray v. American Family Mut. Ins. Co.*, 429 F.3d 757, 764 (8th Cir. 2005) (in turn quoting *Maxon v. Farmers Ins. Co.*, 791 S.W.2d 437, 438 (Mo. Ct. App. 1990) (internal quotation marks omitted)). The Baileys contend that the Policy meets this definition of ambiguity because it promises underinsured motorist coverage to passengers of vehicles insured under the Policy but then carves out an exception to that coverage for those vehicles "[o]wned by or furnished or available for the regular use of you or any "family member." The Baileys' reliance on *Murray* is misplaced. *Murray* involved an interpretation of Missouri law rather than Iowa law. *Murray,* 429 F.3d at 761. The Baileys have not directed my attention to any Iowa court decision adopting this Missouri standard, and my own research has revealed none. Although the Baileys have posited their own contrary interpretation of the Policy, an ambiguity does not arise merely because the parties advance conflicting interpretations of an insurance policy provision. *See LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998); *A.Y. McDonald Indus., Inc.*, 475 N.W.2d at 619. Rather, an insurance provision is ambiguous only if both interpretations are reasonable. *See Boelman*, ___N.W.2d___, 2013 WL 387877, at *5; *Goodwin*, 782 N.W.2d at 470; *Thomas*, 749 N.W.2d at 681. The Baileys' interpretation is unreasonable because it requires reading the restriction on what is an underinsured motor vehicle entirely out of the Policy.

Several state courts have found identical exclusions of family owned vehicles from the definition of underinsured motor vehicle to be clear and unambiguous. *See Rivera v. American Family Ins. Group*, 292 P.3d 1181, 1183 (Colo. Ct. App. 2012) (holding identical provision unambiguous); *Burton v. Kentucky Farm Bureau Mut. Ins. Co.*, 326 S.W.2d 474, 476 (Ky. Ct. App. 2010) (holding identical provision

16

unambiguous); *Murphy v. Kentucky Farm Bureau Mut. Ins. Co.* , 116 S.W.3d 500, 502 (Ky. Ct. App. 2003) (same); *Fleet Nat'l Bank v. Aetna Ins. Co.,* 717 A.2d 861, 864 (Conn. Super. Ct. 1997) (identical exclusion held to contain "plain language" which "makes it clear" to what the exclusion applied); *Newkirk v. United Servs. Auto. Assoc.*, 564 A.2d 1263, 1266 (Pa. Super. Ct. 1989) (holding that identical exclusion of "family cars from the definition of underinsured vehicles in Mr. Newkirk's policy is clear, unambiguous and conspicuous."); *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn. 1983) (finding identical exclusion is "unambiguous"); *Willey v. Farmers Ins. Group*, 523 P.2d 1351, 1352 (N.M. 1974) (holding identical exclusion "is quite clear and unambiguous in its meaning in that it specifically excludes the plaintiff's automobile from the uninsured motorist coverage."), *overruled on other grounds by Foundation Reserve Ins. Co., Inc. v. Marin*, 797 P.2d 452, 454 (N.M. 1990); *cf. Valentine v. Farmers Ins. Exchange*, 141 P.2d 618, (Utah 2006) (finding unambiguous exclusion for vehicle "which is owned by or furnished or available for the regular use by you or a family member."). The Baileys have not cited any contrary authority and my own research has revealed none. I agree with these decisions and find the Policy's exclusion of family owned vehicles from the Policy's definition of underinsured motor vehicle to be clear and unambiguous.

The Iowa Supreme Court and other state appellate courts have upheld the validity of identical or analogous contractual provisions excluding family owned vehicles from the definition of underinsured motor vehicle. *See Jones v. American Star Ins. Co.*, 501 N.W.2d 536, 538 (Iowa 1983) (holding exclusion of family-owned vehicles from the definition of underinsured vehicles was not void on public policy grounds); *Rickerd v. Iowa Mut. Ins. Co.,* 666 N.W.2d 621 (Iowa Ct. App. May 14, 2003) (table decision) (finding identical exclusionary provision did not violate public policy); *Dilly v. Grinnell Sect Ins. Co.*, 563 N.W.2d 197, 199 (Iowa Ct. App. 1997)

(holding that identical exclusion was "valid under Iowa law."); *see also Hutchinson v. Liberty Mut. Fire Ins. Co.*, 624 N.W.2d 929 (Wis. Ct. App. Nov. 27, 2012) (table decision) (holding identical exclusion did not violate state's underinsured motorist law); *Rivera*, 292 P.3d at 1185 (holding policy's similar exclusion did not violate public policy); *Burton*, 326 S.W.2d at 476 (holding identical provision did not violate public policy); *Murphy*, 116 S.W.3d at 500 (same); *Fleet Nat'l Bank,* 717 A.2d at 865 (same law); *Jones v. State Farm Mut. Auto. Ins. Co.*, 635 N.E.2d 200, 203 (Ind. Ct. App. 1994) (holding underinsured motorist provision that excluded an insured's vehicle from the definition of underinsured motor vehicle did not render policy illusory or void against public policy); *State Farm Mut. Ins. Co. v. Conn*, 842 S.W.2d 350, 351 (Tex. App. 1992) (holding similar policy language consistent with Texas law); *Kang v. State Farm Mut. Auto. Ins. Co.*, 815 P.2d 1020, 1022 (Hawaii 1991) (holding similar exclusion did not violate public policy); *Newkirk*, 564 A.2d at 1266 (holding that similar limitation did not violate public policy); *Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1149 (Pa. Super. Ct. 1988) (holding estate of a passenger killed in a single-vehicle accident that had already recovered the limits of the driver's liability insurance could not seek underinsured motorist benefits under the same policy when that policy contained exclusion of family-owned vehicles from the definition of underinsured vehicles); *Holz v. North Pac. Ins. Co.* 765 P.2d 1306, 1308 (Wash. Ct. App. 1988) (holding that the "clear language" of insurance policy provision which excluded the insured vehicle from the definition of an underinsured vehicle did "not violate public policy or the underinsured motorist statute."); *Sullivan v. State Farm Mut. Auto Ins. Co.*, 513 So.2d 992 (Ala. 1987) (holding that similar exclusionary provision was valid and did not violate public policy); *Millers Casualty Ins. Co. v. Briggs*, 665 P.2d 891, 895 (Wash. 1983) (holding that the exclusion of the insured automobile from the definition of an underinsured vehicle was valid); *Myers*, 336

18

N.W.2d at 291 (holding that exclusion of a car owned by the named insured from the definition of "underinsured motor vehicle" did not violate Minnesota's No–Fault Automobile Insurance Act). *But see State Farm Mut. Auto. Ins. Co. v. Duran*, 785 P.2d 570, 573 (Ariz. 1989) (finding the "furnished for regular use" exclusion void against public policy); *Marin*, 797 P.2d at 454 (holding exclusionary provision void as violative of public policy); *Bratcher v. National Grange Mu. Ins. Co.*, 356 S.E.2d 151, 152 (S.C. Ct. App. 1987) (holding invalid "family car exclusion" because legislature had not authorized such a limitation).

One treatise offers the following rationale permitting such exclusions:

> One persuasive reason for sustaining this limitation on coverage is to preclude transforming underinsured motorist insurance into liability insurance for the operators of a motor vehicle covered by the applicable motor vehicle policy which includes both coverages.

3 ALAN I. WIDISS & JEFFREY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 35.7 (3rd ed. 2005).[2]   In *Jones*, the Iowa Supreme Court "embrace[d]"

---

[2] Similarly, the Washington Supreme Court offered the following rationale:

> Our conclusion is also dictated by common sense and the consuming public's general understanding of coverage under these circumstances. The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance. This result would cause insurance companies to charge

19

this reasoning. *Jones*, 501 N.W.2d at 538 (quoting earlier edition of Widiss treatise). Accordingly, there is every indication that Iowa courts will continue to approve such a restriction on underinsured motorist coverage.

In summary, I find the Policy contains a plain and unambiguous exclusion excepting from the contractual definition of underinsured motor vehicle the Moens' own automobile, and that the exclusionary language is not inconsistent with Iowa's underinsured motorist statute. Thus, I deny the Baileys' Motion For Partial Summary Judgment and grant Buckeye's Cross Motion For Summary Judgment.[3]

## III.   CONCLUSION

For the reasons discussed above, I deny the Baileys' Motion For Partial Summary Judgment and grant Buckeye's Cross Motion For Summary Judgment. Accordingly, I find that the Moens' underinsured motorist coverage is unavailable to pay Braeden Bailey's claim for damages.

---

substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost.

*Briggs*, 665 P.2d at 895.

[3]Having granted Buckeye's motion on the Policy's exclusion of the Moens's own automobile from the definition of an underinsured motor vehicle, I need not consider Buckeye's alternative anti-stacking argument.

**IT IS SO ORDERED**.

**DATED** this 25th day of March, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA