# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

BUCKEYE STATE MUTUAL
INSURANCE COMPANY,

       Plaintiff,

vs.

BRENT MOENS, TANYA DEE
MOENS, ESTATE OF GERALD RALPH
BOGE a/k/a JERALD RALPH BOGE,
DOUGLAS LEE OLDENKAMP,
TRACEY BAILEY, individually and as
Guardian of BJB, DANIEL BAILEY,
LEE RAE GEISINGER, individually,
CONSERVATORSHIP OF LEE RAE
GEISINGER, ALICE MARIE
GEISINGER, individually,
CONSERVATORSHIP OF ALICE
CONDIT a/k/a ALICE MARIE
GEISINGER, WELLMARK, INC.,
UNITED FIRE GROUP, INC., VALLEY
FORGE INSURANCE COMPANY, and
AMERICAN ZURICH INSURANCE
CO.,

       Defendants.

DANIEL BAILEY, TRACEY BAILEY,
and BRAEDEN J. BAILEY,

       Cross-Claimants,

vs.

BRENT MOENS, TANYA DEE
MOENS, and COLE MOENS,

       Cross-Claim Defendants.

No. C 12-4025-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE MOENS
DEFENDANTS' MOTION TO ENJOIN
THE STATE COURT PROCEEDING
FILED BY THE ESTATE OF GERALD
RALPH BOGE**

LEE RAE GEISINGER, individually,
CONSERVATORSHIP OF LEE RAE
GEISINGER, ALICE MARIE
GEISINGER, individually,
CONSERVATORSHIP OF ALICE
CONDIT a/k/a ALICE MARIE
GEISINGER,

        Third-Party Plaintiffs,

vs.

C.M. and GCC ALLIANCE
CONCRETE, INC.,

        Third-Party Defendants.

_____

# TABLE OF CONTENTS

**I.  INTRODUCTION** ........................................................................ **4**
    *A.  Factual Background* ........................................................ **4**
    *B.  Procedural Background* ................................................... **5**
        *1.  The federal interpleader action* .................... **5**
        *2.  The Geisinger Defendants' state court action* ............ **10**
        *3.  The Boge Estate's state court action* ................ **11**
        *4.  The motion to enjoin state court proceedings* ............ **12**

**II.  LEGAL ANALYSIS** ................................................ **13**
    *A.  Statutory Interpleader Actions* ............................. **13**
        *1.  Purpose and provisions* ............................... **13**
        *2.  The authority to stay other actions* ................ **19**
    *B.  Arguments Of The Parties* ................................... **20**
        *1.  The movants' arguments* ............................ **20**
        *2.  The Boge Estate's response* ........................ **22**
        *3.  The movants' reply* ................................. **24**
    *C.  Analysis* ...................................................... **25**
        *1.  The teachings of* **Tashire** ......................... **26**
        *2.  Application of* **Tashire** ............................ **31**
            *a.  The relationship between the interpleader and*
                *the other litigation* ............................. **31**

   *b.*  *The relevance of judicial economy* ........................... *33*
   *c.*  *Authority for a more limited injunction* ..................... *39*

***III.* *CONCLUSION*** ................................................................ ***40***

   This interpleader action, pursuant to 28 U.S.C. §§ 1335, 1397, and 2361, was initiated by an insurance company, because it asserts that claims for "bodily injury" coverage, arising from a multi-vehicle accident, exceed policy limits. The insurance company has named as defendants its insureds and all claimants to "bodily injury" coverage, deposited funds up to the policy limits with the court, and asks to be exonerated from any further liability to its insureds or the claimants, leaving this court to determine the proper allocation of the funds among the claimants. One state court action arising from the underlying accident was stayed by agreement of the parties, pending disposition of this federal action, and all of the claims concerning liability and fault originally asserted in that state court action are now asserted in this federal action, via cross-claims and third-party claims. The plaintiff's insureds now seek an order enjoining another state court action arising from the accident, after the state court denied a contested motion for a stay in that case. Most of the parties to this federal action have joined in the insureds' motion to stay the remaining state court action, but the plaintiff in that action, who is already a party to this federal interpleader action, resists such a stay. The insureds assert that an injunction on the remaining state court

action is authorized by § 2361 and otherwise appropriate, while the plaintiff in that action asserts that such an injunction would exceed the authority for an injunction under § 2361, as interpreted by the United States Supreme Court in *State Farm Fire & Casualty Company v. Tashire*, 386 U.S. 523 (1967).

## I.     INTRODUCTION

### A.     Factual Background

This interpleader action and two state court actions arise from a multi-vehicle accident on August 11, 2010, at the intersection of U.S. Highway 71 and County Road C25, in Buena Vista County, Iowa.  The initial collision occurred as a vehicle driven by teenager Cole Moens, in which BJB was a passenger, entered the highway and collided with a semi-trailer truck driven by Douglas Lee Oldenkamp, and owned by GCC Alliance Concrete, Inc., which was traveling on the highway.  Cole's vehicle then spun into a vehicle driven by Lee Rae Geisinger, in which Alice Marie Geisinger was a passenger, and Oldenkamp's truck collided with another semi-trailer truck driven by Gerald Boge, and owned by Hog Slat, Inc.  Although there are allegations of tortious conduct by others involved in the accident, only Cole received any citations arising from the accident—specifically, a citation for failure to yield upon entering through a highway, and a citation for violation of a minor's school driver's license.  Cole was convicted at trial of both charges.  Brent and Tanya Moens, Cole's parents, owned the vehicle that Cole was driving.  That vehicle was covered by an insurance policy (the Policy), issued by Buckeye State Mutual Insurance Company (Buckeye), which had a $250,000 per person and $500,000 per accident limit for "bodily injury" liability.

## B. Procedural Background

### 1. The federal interpleader action

On March 20, 2012, plaintiff Buckeye initiated this federal interpleader action by filing a Complaint (docket no. 1), alleging interpleader claims, pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1335 and 2361, and a claim for declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202. Buckeye named as defendants its insureds, Brent and Tanya Moens (the Moens Defendants),[1] and two groups of claimants against the Policy, identified as the "bodily injury claimants" and the "lien claimants." The "bodily injury claimants" were identified as BJB and his parents, Daniel and Tracey Bailey (the Bailey Defendants); Gerald Boge (the Boge Estate); Oldenkamp; and Lee and Alice Geisinger and their respective conservatorships (the Geisinger Defendants). The "lien claimants" were identified as Wellmark, Inc. (Wellmark), as to any recovery by the Bailey Defendants; United Fire and Casualty Company (United Fire), as to any recovery by the Bailey Defendants; CNA, as to any recovery by the Boge Estate; and American Zurich Insurance Company (American Zurich), as to any recovery by Oldenkamp. Buckeye alleged that the claims of these defendants exceeded the limits of the Policy and, consequently, that the claims of the various defendants are adverse. Also on March 20, 2012, Buckeye filed its Motion To Deposit Funds (docket no. 2), seeking leave of the court to deposit with the Clerk of Court the pertinent Policy limits of $500,000 as the interpleader registry funds pursuant to § 1335(a)(2) and Rule 67(a). By Order (docket no. 6), filed March 27, 2012, a magistrate judge of this court directed the deposit of the funds in question with the Clerk of Court, with the funds to be deposited in an interest-bearing account, pending outcome of this action.

---

[1] Cole Moens was not initially named as a party to the federal interpleader action, so he is not identified as one of the Moens Defendants.

On April 17, 2012, the Bailey Defendants filed their Answer, Counterclaim, and Cross-Claim (docket no. 9). As to their claims, the Bailey Defendants asserted a counterclaim against Buckeye for "underinsured motorist" coverage (in addition to "bodily injury" coverage); a cross-claim against Oldenkamp for negligence arising from the accident on August 11, 2010; a cross-claim against the Moens Defendants for vicarious liability for Cole's negligence; a third-party claim against Cole, who had not been a party to this lawsuit until then, for negligence arising from the accident on August 11, 2010; and a cross-claim for "underinsured motorist" coverage against United Fire, the Bailey Defendants' own insurer. On May 18, 2012, Buckeye filed its Answer To Defendants Baileys' [sic] Counterclaim (docket no. 17). On September 21, 2012, United Fire filed an Answer (docket no. 57) to the Bailey Defendants' Cross-Claim.[2] Three other defendants filed Answers to Buckeye's original Complaint: the Geisinger Defendants on May 17, 2012 (docket no. 15); Valley Forge Insurance Company (Valley Forge) on June 27, 2012 (docket no. 24), in which it asserted that it had been improperly identified in Buckeye's original Complaint as CNA; and the Boge Estate on July 16, 2012 (docket no. 25).

On July 24, 2012, with leave of court, Buckeye filed an Amended Complaint (docket no. 31), substituting Tracey Bailey, as the Guardian of BJB, for BJB, and substituting Valley Forge for CNA. In its Amended Complaint, Buckeye alleges that it is an Ohio insurance company that is authorized to do business in Iowa; that the Moens Defendants are residents and citizens of Iowa; that the Bailey Defendants are residents and citizens of Iowa; that defendant Wellmark is an Iowa corporation with its principal place of business in Iowa; that Untied Fire is an Iowa insurance company with its

---

[2] It does not appear to me that the Moens Defendants have answered the Bailey Defendants' cross-claim against them, that Cole Moens has answered the Bailey Defendants' third-party complaint against him, or that Oldenkamp has answered the Bailey Defendants' cross-claim against him.

principal place of business in Iowa; that the Boge Estate is administered in, resides in, and is a citizen of Iowa; that Valley Forge is a Pennsylvania corporation with its principal place of business in Illinois; that Oldenkamp resides in and is a citizen of Iowa; that American Zurich is an Illinois corporation with its principal place of business in Illinois; and that the Geisinger Defendants reside in and are citizens of Iowa. Jurisdiction is premised on 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds $75,000, and is between citizens of different states, and § 1335(a)(1), because there are two or more adverse claimants who are of diverse citizenship as defined in 28 U.S.C. § 1332(a). Venue is premised on 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 1397.

Buckeye asserts three claims in its Amended Complaint, which are essentially the same as in its original Complaint. More specifically, in **Count I**, Buckeye asserts a "Rule 22 Interpleader" claim, asserting that it is or may be exposed to double or multiple liability with respect to the fund represented by the Policy limits for bodily injury. Buckeye prays that all defendants be interpleaded and required to assert their various claims in this action, that it be discharged, released, and exonerated from any and all claims, and that it be awarded such other and further relief as the court deems just and equitable, including an award of all of its costs and expenses from the fund. In **Count II**, Buckeye asserts a "28 U.S.C. §§ 1335, 2361 Interpleader" claim, again alleging that there are two or more adverse claimants under the Policy, and that it would deposit with the Clerk of Court the sum of $500,000, representing the pertinent Policy limits, as registry funds, pursuant to Rule 67(a) of the Federal Rules of Civil Procedure, to abide the judgment of the court. In that count, Buckeye prays that a preliminary and permanent injunction be entered against all defendants forbidding each of them from suing it on the Policy; that the defendants be interpleaded and required to assert their various claims wholly against the fund paid into the court; that it be

7

discharged, released, and exonerated from any and all claims to such fund; and that it be awarded such other and further relief as the court deems just and equitable, including an award of all of its costs and expenses from the fund. In **Count III**, Buckeye asserts a "28 U.S.C. §§ 2201, 2202 Declaratory Judgment" claim to resolve a dispute with the Bailey Defendants about availability to them of underinsured/uninsured motorist coverage under the Policy. Five parties filed answers to Buckeye's Amended Complaint: American Zurich on July 31, 2012 (docket no. 34); Valley Forge on August 1, 2012, (docket no. 37); the Moens Defendants on August 16, 2012 (docket no. 42); United Fire on September 21, 2012 (docket no. 56); and the Geisinger Defendants on October 16, 2012 (docket no. 73).[3]

On September 18, 2012, the Geisinger Defendants filed their Cross-Claims (docket no. 49), consisting of a "negligence" claim against the Moens Defendants, in **Count I**, and a "negligence" claim against Oldenkamp, in **Count II**. On October 12, 2012, the Moens Defendants filed an Answer (docket no. 72) to the Geisinger Defendants' Cross-Claim. On December 31, 2012, Oldenkamp filed his Answer (docket no. 85) to the Geisinger Defendants' Cross-Claim. On October 11, 2012, the Geisinger Defendants filed a Third-Party Complaint (docket no. 68) asserting a "negligence" claim against Cole Moens, in **Count I**, and a claim of "vicarious liability" for the negligence of Oldenkamp against GCC Alliance Concrete, Inc. (GCC), which had not been a party to this lawsuit until then. On November 21, 2012, Cole Moens filed his Answer (docket no. 79) to the Geisinger Defendants' Third-Party Complaint, and on December 31, 2012, GCC filed its Answer (docket no. 84).

The various pleadings were not the only activity in this federal interpleader action. On August 27, 2012, the Bailey Defendants filed a Motion For Partial

---

[3] It does not appear to me that Oldenkamp has answered either Buckeye's original Complaint or its Amended Complaint.

Summary Judgment (docket no. 43), asserting that there were no genuine issues of material fact as to the existence or applicability of the Moens Defendants' liability and the availability to them of underinsured motorist coverage under the Buckeye Policy. On September 20, 2012, Buckeye filed its Resistance To Motion For Summary Judgment And Cross-Motion For Summary Judgment (docket no. 51), asserting that it, not the Bailey Defendants, was entitled to summary judgment that there was no underinsured motorist coverage available to the Bailey Defendants under the Policy. On September 20, 2012, the Moens Defendants also filed a Response (docket no. 54) to the Bailey Defendants' Motion For Partial Summary Judgment. On October 11, 2012, the Bailey Defendants filed their Resistance (docket no. 70) to Buckeye's Cross-Motion For Summary Judgment. On October 22, 2012, Buckeye filed its Reply (docket no. 78) in further support of its motion. On March 25, 2013, I filed a Memorandum Opinion And Order Regarding Cross Motions For Summary Judgment (docket no. 88), *published at Buckeye State Mut. Ins. Co. v. Moens*, 2013 WL 1196622 (N.D. Iowa March 25, 2013) (slip op.), denying the Bailey Defendants' Motion For Partial Summary Judgment, granting Buckeye's Cross-Motion For Summary Judgment, and, accordingly, holding that the Moens Defendants' underinsured motorist coverage under the Policy is not available to pay Braeden J. Bailey's (BJB's) claim for damages.

On May 9, 2013, the parties filed a Stipulation (docket no. 103) to the dismissal, without prejudice, of the Bailey Defendants' counterclaim against Buckeye seeking recovery of underinsured motorist benefits for any fault that Oldenkamp may have arising from his operation of the truck owned by GCC that was involved in the August 11, 2010, accident. The parties stipulated that such dismissal does not, in any manner, affect the ruling entered on March 25, 2013, which denied the Bailey Defendants' Motion For Partial Summary Judgment and granted Buckeye's Cross-Motion For Summary Judgment.

Before turning to the motion, now before me, to enjoin one related state court action, I will briefly describe both of the related state court actions arising from the August 11, 2010, accident.

### 2.    *The Geisinger Defendants' state court action*

On July 27, 2012, the Geisinger Defendants filed an action in the Iowa District Court For Buena Vista County (the Geisinger Defendants' State Court Action), asserting claims arising from the August 11, 2010, accident. *See* Moens Defendants' Motion To Enjoin State Court Proceeding, Exhibit C (docket no. 87-4), second document (Geisinger Defendants' State Court Petition).    Thus, the Geisinger Defendants' State Court Action was filed almost two-and-a-half months after they filed their Answer to Buckeye's original federal interpleader Complaint, but before they filed any of their cross-claims or third-party claims in this federal action.    In their State Court Petition, the Geisinger Defendants named as defendants the Moens Defendants and Cole Moens, Oldenkamp, and GCC.    They asserted the following claims:    In **Count I**, "negligence" claims against Cole Moens and Oldenkamp and "vicarious liability" claims against the Moens Defendants and GCC; in **Count II**, a "loss of consortium" claim by Lee Geisinger against "the Defendants"; and, in **Count III**, a "loss of consortium" claim by Alice Geisinger against "the Defendants."

Approximately two-and-a-half months after the Geisinger Defendants filed their Cross-Claims in this federal interpleader action and approximately one-and-a-half months after they filed their Third-Party Complaint in this federal interpleader action, Iowa District Court Judge Carl J. Peterson entered his November 26, 2012, Order On Joint Motion To Stay in the Geisinger Defendants' State Court Action.    Moens Defendants' Motion To Enjoin State Court Proceeding, Exhibit A (docket no. 87-2) (Order Staying Geisinger Defendants' State Court Action).    That Order concerned a Motion To Stay Proceedings, by all parties to that action, requesting a stay of that

proceeding until the resolution of the parties' claims and defenses currently pending in this federal interpleader action. After considering the reasons set out in the motion and the factors in *First Midwest Corp. v. Corporate Fin. Assocs.*, 663 N.W.2d 888 (Iowa 2003), Judge Peterson determined that a stay was proper and in the interest of the parties and justice. Therefore, he granted the parties' joint motion, stayed the Geisinger Defendants' State Court Action as to the parties in that case, and noted that, "[n]otwithstanding applicable federal law, nothing in this Order shall limit a party's right to request a lift of the current stay from this Court." Order Staying Geisinger Defendants' State Court Action at 2.

### 3. *The Boge Estate's state court action*

On August 13, 2012, almost a month after the Boge Estate answered Buckeye's original Complaint in this federal interpleader action, the Boge Estate filed an action in the Iowa District Court For Buena Vista County (the Boge Estate's State Court Action), asserting claims arising from the August 11, 2010, accident. *See* Moens Defendants' Motion To Enjoin State Court Proceeding, Exhibit D (docket no. 87-5), second document (Boge Estate's State Court Petition). The Boge Estate named as defendants GCC, Oldenkamp, the Moens Defendants, Cole Moens, and Progressive Northern Insurance Company (Progressive), which was Gerald Boge's insurer. At that time, GCC was not a party to this federal interpleader action, and Progressive was not yet and has not since become a party to this federal interpleader action. The Boge Estate asserts the following claims in its State Court Petition: in **Count I**, a "negligence" claim against Oldenkamp and a claim of "vicarious liability" against GCC for Oldenkamp's negligence; in **Count II**, a "negligence" claim against the Moens

Defendants, individually and as the parents of Cole Moens;[4] and, in **Count III**, an "underinsured motorist" claim against Progressive.

After all of the various pleadings had been filed in this federal interpleader action, the Moens Defendants filed a motion on December 21, 2012, to stay the Boge Estate's State Court Action, but that motion was resisted by both the Boge Estate and Progressive. The other parties to that action, GCC and Oldenkamp, apparently took no position. On January 22, 2013, Iowa District Judge David A. Lester filed his Order Re: Defendant Moens' Motion To Stay in the Boge Estate's State Court Action. Moens Defendants' Motion To Enjoin State Court Proceeding, Exhibit B (docket no. 87-3) (Order Denying Stay Of The Boge Estate's State Court Action). After considering the factors in *First Midwest Corp. v. Corporate Fin. Assocs.*, 663 N.W.2d 888 (Iowa 2003), as had Judge Peterson in the Geisinger Defendants' State Court Action, and after also noting that a stay "would be contrary to the function a federal interpleader action is intended to serve," citing *State Farm Fire And Casualty Co. v. Tashire*, 386 U.S. 523, 533-37 (1967), Judge Lester denied the Moens Defendants' motion in the Boge State Court Action. Order Denying Stay Of The Boge Estate's State Court Action at 2-3.

### 4. *The motion to enjoin state court proceedings*

Having failed to obtain a stay of the Boge Estate's State Court Action in state court, the Moens Defendants and Cole Moens filed their March 18, 2012, Motion To Enjoin State Court Proceedings (docket no. 87), which is now before me, in this federal interpleader action. In their Motion, they ask me to enjoin, pursuant to 28 U.S.C. §§ 1335 and 2361, any further prosecution of the Boge Estate's State Court Action until

---

[4] The Boge Estate's caption to **Count II** does not identify Cole Moens as a separate defendant, although he is identified as "Defendant Cole Moens" in the allegations of that claim.

the conclusion of this federal interpleader action. Several parties filed Joinders in the Moens Defendants' and Cole Moens's Motion: the Geisinger Defendants on March 26, 2013 (docket no. 89); the Bailey Defendants on March 28, 2013 (docket no. 90); Valley Forge and American Zurich, separately, on March 29, 2013 (docket nos. 91 and 92, respectively); and Oldenkamp and GCC, jointly, on April 11, 2013 (docket no. 99). On the other hand, on April 8, 2013, the Boge Estate filed its Resistance (docket no. 98) to the Motion, and Wellmark and United Fire have filed no response at all to the Motion. On April 18, 2013, the Moens Defendants and Cole Moens filed a Reply (docket no. 100) in further support of their request to enjoin the Boge Estate's State Court Action.

No party requested oral arguments on the Motion To Enjoin State Court Proceedings in the manner required by applicable local rules, and I have not found oral arguments to be necessary in light of the parties' briefing and the applicable law. Therefore, the Motion is deemed fully submitted on the parties' written submissions.

## II. LEGAL ANALYSIS

To put in context the parties' arguments concerning whether or not to stay or enjoin the Boge Estate's State Court Action, I will first examine the purpose and requirements of a federal statutory interpleader action. I will also provide a preliminary overview of the authority of a federal court hearing such an action to stay other related actions.

### A. Statutory Interpleader Actions

#### 1. Purpose and provisions

The Eighth Circuit Court of Appeals explained, some time ago, that both statutory interpleader and interpleader pursuant to Rule 22 of the Federal Rules of Civil

Procedure are "designed to protect stakeholders not only from double or plural liability but also from duality or plurality of suits." *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1306 (8th Cir. 1977); *accord State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (explaining that the legislative purpose of the statute is "broadly to remedy the problems posed by multiple claimants to a single fund."). Provisions of the Judiciary Code and Judiciary Act of 1948 establishing statutory interpleader now appear in three statutes, 28 U.S.C. §§ 1335, 1397, and 2361. *See Underwriters at Lloyd's v. Nichols*, 363 F.2d 357, 360-61 (8th Cir. 1966) (providing a brief history of statutory interpleader). Only the statutory interpleader claim is identified here as the basis for the Moens Defendants' and Cole Moens's Motion To Enjoin State Court Proceedings.

More specifically, the primary federal interpleader statute, § 1335, provides as follows:

> **(a)** The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, *if*

> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; *and if* (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the

14

registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

**(b)** Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335 (emphasis added); *see also Dakota Livestock Co.*, 552 F.2d at 1303-04 (summarizing the statute as follows: "That statute provides in substance that a stakeholder may maintain in a federal district court a bill of interpleader or in the nature of interpleader if the amount at stake is in excess of $500.00, and if two or more adverse claimants of the fund or property in question are of diverse citizenship as that term is defined in 28 U.S.C. § 1332. The statute also provides that the conflicting claims do not have to have a common origin or to be identical; it is sufficient if they are adverse to and independent of each other.").

Although the primary purpose of an interpleader action is to limit the stakeholder's exposure to multiple liability, § 1335 "is merely a special brand of diversity jurisdiction." *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320-21 (8th Cir. 1991). Specifically, in contrast to the requirement of "complete" diversity under 28 U.S.C. § 1332, § 1335 requires only "minimal" diversity, that is, diversity between two or more adverse parties. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005) (demonstrating the contrast by comparing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806), with *Tashire*, 386 U.S. at 530–531 (1967)); *accord City of Chicago v. International College of Surgeons*, 522 U.S. 156, 184 (1997) (Ginsburg, J., joined by Stevens, J., dissenting) ("Diversity of citizenship must be complete to proceed under § 1332, see *Strawbridge v. Curtiss*, 3 Cranch 267, 268, 2 L.Ed. 435

(1806), but it may be 'minimal' in interpleader cases brought under § 1335, see *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–531, 87 S.Ct. 1199, 1203–1204, 18 L.Ed.2d 270 (1967)."); *see also Dakota Livestock Co.*, 552 F.2d at 1306 (explaining, "The requirement of § 1335 that there be adverse claimants of diverse citizenship is jurisdictional, and if claimant diversity hinges upon the citizenship of one party, and if that party is not an adverse claimant, the interpleader court has no jurisdiction and must dismiss the complaint.").

Federal interpleader jurisdiction also "'depends on identifiable property or a limited fund or pecuniary obligation, and it is not proper to predicate jurisdiction on the mere potential to recover damages for pecuniary injury.'" *In re Federal Skywalk Cases*, 680 F.2d 1175, 1182 (8th Cir. 1982) (quoting *Murphy v. Travelers Insurance Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976), in turn citing *Wallach v. Cannon*, 357 F.2d 557 (8th Cir. 1966)). Therefore, subject matter jurisdiction in a statutory interpleader action is "perfected" when the district court authorizes payment of the funds into the court registry, and the stakeholder deposits the funds. *Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988). The court's jurisdiction has been "perfected" in this case, pursuant to the magistrate judge's March 27, 2012, Order (docket no. 6), directing deposit of the funds representing Policy limits for "bodily injury" coverage with the Clerk of Court, and the subsequent deposit of those funds on March 28, 2012. The court's jurisdiction in a federal statutory interpleader action is not limited to the stake deposited with the court, however, but extends to separate causes of action against the stakeholder for damages over which the court also has subject matter jurisdiction. *Id.* (the court had jurisdiction over a compulsory counterclaim for breach of fiduciary duty against the insurance company that brought the federal interpleader action). The Eighth Circuit Court of Appeals has explained that § 1335 is "to be construed liberally." *Dakota Livestock Co.*, 522 F.2d at 1306.

Section 1397, the companion venue statute for federal statutory interpleader actions, provides that "[a]ny civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. Venue is not currently contested in these proceedings.

The third provision of federal statutory interpleader, § 2361, provides for determination of the case, as follows:

> Such district court [issuing process] shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361 (emphasis added).[5] As to the "determine the case" language of this statutory provision, in a typical interpleader action, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007); *see also Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 849 (6th Cir. 2009) (recognizing that, if statutory interpleader is properly invoked, "'the court determines the respective rights of the claimants to the fund,'" and "the court has exclusive control over the disputed res" (quoting *High Tech. Prods., Inc.*, 497 F.3d at 641)); *Rhoades v. Casey*, 196 F.2d 592, 600 (5th Cir. 1999) ("If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants. [Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE: Civil 2d § 1714 (1986)]. When there is no genuine issue of material fact the second

---

[5] As the Eighth Circuit Court of Appeals has observed, § 2361 also "authorizes nationwide service of process in statutory interpleader actions." *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1142 (8th Cir. 1976).

stage may be adjudicated at summary judgment, and if there is a trial each claimant must prove their right to the fund by a preponderance of the evidence. *Id*. After entering a judgment in the interpleader action the district court also has the power to make all appropriate orders to enforce its judgment. 28 U.S.C. § 2361.").[6]

---

[6] The Eighth Circuit Court of Appeals has also explained that Rule 22 of the Federal Rules of Civil Procedure "permits federal interpleader in certain cases not covered by the statute," that it is also "designed to protect stakeholders not only from double or plural liability but also from duality or plurality of suits," and that it is "to be construed liberally. *Dakota Livestock Co.*, 552 F.2d at 1306. Rule 22 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

    **(a)**    **Grounds.**

        **(1)**    **By a Plaintiff.** Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

            **(A)**    the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

            **(B)**    the plaintiff denies liability in whole or in part to any or all of the claimants.

        **(2)**    **By a Defendant.** A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

    **(b)**    **Relation to Other Rules and Statutes.** This rule supplements—and does not limit—the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to—and does not supersede or limit—the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.

## 2.     *The authority to stay other actions*

Section 2361, the third statutory provision of federal statutory interpleader, also provides authority for the federal court to stay other actions, as follows:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, *a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.* Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.

28 U.S.C. § 2361 (emphasis added).   The federal appellate courts agree that an injunction or stay on other litigation issued under § 2361 must not be "overbroad." *See, e.g., United States Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 211 (3d Cir. 1999) (citing cases).   Somewhat more specifically, "[t]he injunction cannot extend to litigation involving the fund that is not within the subject matter of the interpleader." *Id.*   This is so, at least in part, because "interpleader was never intended . . . to be an all-purpose 'bill of peace.'" *Tashire*, 386 U.S. at 535.   Federal appellate courts also agree that appellate review of a decision granting or denying injunctive relief pursuant

---

FED. R. CIV. P. 22.   Unlike a statutory interpleader action pursuant to § 1335, however, "no deposit [i]s required for jurisdiction [if] the interpleader action was brought pursuant to Rule 22, [and if no] deposit [is] requested by the claimants or required by the court." *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1291 (8th Cir. 1980).   Again, Buckeye asserts interpleader claims pursuant to both Rule 22 and the statutes, but only the statutory interpleader claim is identified here as the basis for the Moens Defendants' and Cole Moens's Motion To Enjoin State Court Proceedings.

to § 2361 is for abuse of discretion. *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 23 (2d Cir. 1997) (citing cases).[7]

With this background to federal statutory interpleader actions, I turn to consideration of the parties' arguments concerning whether or not to stay the remaining state court action arising from the August 11, 2010, accident.

### B.      Arguments Of The Parties

#### 1.      The movants' arguments

In support of their Motion To Enjoin State Court Proceedings, the Moens Defendants and Cole Moens argue, in essence, that, because the Boge Estate's State Court Action is ongoing, they are faced with overlapping litigation, which an interpleader action is intended to prevent and which § 2361 allows this court to enjoin. They also argue that, because this court's decisions will not be *res judicata* in the Boge Estate's State Court Action, they face the likelihood of inconsistent determinations. They argue that any claimants to the interpleaded funds, as well as the stakeholder, may seek injunctive relief pursuant to § 2361.

More specifically, the Moens Defendants argue that they are currently parties to three lawsuits: this federal interpleader action, the Geisinger Defendants' State Court Action, and the Boge Estate's State Court Action. They argue that, although the Geisinger Defendants' State Court Action has already been stayed in favor of this action, the Boge Estate's State Court Action is an overlapping action in which the Boge Estate also seeks to determine the liability of the Moens Defendants arising out of the

---

[7] The Fifth Circuit Court of Appeals has held that, where an interpleader action is filed pursuant to Rule 22, not pursuant to § 1335, a request for an injunction on related actions "must be tested by the standards of Fed.R.Civ.P. 65," because § 2361 is not available. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

August 11, 2010, accident, so that they must defend actions in two fora.  They argue that enjoining the remaining State Court Action is desirable, to ensure the effectiveness of the interpleader remedy, and necessary, because the Boge Estate cannot be relied upon to show self-restraint to avoid overlapping actions, where the Boge Estate refuses to accept a stay of its State Court Action.  They contend that it is apparent that such overlapping actions present a danger that they will be subjected to inconsistent determinations of the extent of their fault for the various injured parties' damages.  In short, they are seeking the determination of their alleged fault in a single court. Indeed, they argue that this court must necessarily make its own fault determination in order to fully distribute the fund consisting of the "bodily injury" limits of the Policy, and that, once that determination is made and the interpleaded funds have been equitably distributed, the Boge Estate can resume the prosecution of its State Court Action with full knowledge of their fault, if any.  They also argue that the liability of Progressive for underinsured motorist coverage in the Boge Estate's State Court Action cannot be determined until after funds are distributed in this case, and the amount of any deficiency in coverage for the Boge Estate is determined.

Thus, they argue that the factors identified in *Shell Pipe Line Corp. v. W. Texas Mktg. Corp.*, 540 F. Supp. 1155, 1160 (S.D. Tex. 1982), as relevant to the determination of whether or not to grant an injunction pursuant to § 2361 weigh in favor of an injunction here.  Specifically, they argue that (1) without injunctive relief they would have to engage in discovery in two fora under two different sets of rules; (2) their participation in the Boge Estate Action would not facilitate the prompt determination of this action; (3) this court need only determine fault among the claimants to the interpleaded funds arising out of the August 11, 2010 accident; (4) Progressive is the only non-party to this action, and its liability is fully dependent on the outcome of this action, and this action is more comprehensive than the Boge

Estate's State Court Action, as it involves all potential claimants to the fund; and (5) this interpleader action was first-filed, the parties in this action have already engaged in significant motion practice including dispositive motions, and discovery is underway. Similarly, while they acknowledge that this court cannot engage in direct appellate review of the order in state court denying a stay in the Boge Estate's State Court Action, they argue that the factors set forth in *First Midwest Corp. v. Corp. Finance Assocs.*, 663 N.W.2d 888, 891 (Iowa 2003), which Iowa courts consider when deciding whether or not to stay an action in favor of another action, also weigh in favor, not against, staying the Boge Estate's State Court Action.

Finally, the movants argue that the Supreme Court's decision in *Tashire* is inapposite. This is so, they argue, because they read *Tashire* to be concerned with protecting claimants who were not subject to the personal jurisdiction of the interpleader court; the fact that the interpleader action was filed by a minor insurance carrier with only a small stake in the liability determinations in a mass tort that involved damages well beyond the amount of the fund; and the fact that some state court actions were filed before the federal interpleader action. Here, however, they argue that the Boge Estate "consented" to this federal interpleader action months before it filed its own action; Progressive, the only party in the Boge Estate's State Court Action not already a party here, is also subject to this court's personal jurisdiction; and the Court in *Tashire* pointed out that, in some circumstances, a federal court could exercise jurisdiction over the entire litigation, as opposed to just the allocation of funds.

Thus, they argue that a stay on the Boge Estate's State Court Action would not offend either state or federal law.

### 2. *The Boge Estate's response*

In its Resistance, the Boge Estate argues that this court should resist the attempt by the Moens Defendants and Cole Moens to obtain a stay from this federal court on

the Boge Estate's State Court Action, after they failed to obtain such a stay from the state court. The Boge Estate challenges the arguments of the Moens Defendants and Cole Moens that injunctive relief is appropriate under the *Shell Pipe Line* factors and the *First Midwest* factors, and argues that such an injunction is contrary to *Tashire*.

As to the *Shell Pipe Line* factors, the Boge Estate argues, first, that most discovery issues will overlap, rather than duplicate, and that there is no indication that the parties will be burdened with additional discovery or lack of familiarity with applicable rules, where the state court is in the same state as the federal court. Next, the Boge Estate argues that trial in its State Court Action is scheduled to start months before the trial in this federal interpleader action and will, in fact, facilitate prompt determination of this action by reducing the number and type of issues to be decided in the interpleader action. Furthermore, the Boge Estate argues that the issues in the federal interpleader action have now expanded and become "muddled" well beyond the scope of its relatively narrow State Court Action, because of the increased number of parties and claims. It also argues that there is only one additional defendant in its state court action and that a comparison between the Policy limits and the total damages from that defendant, if any, cannot be computed at this time. Also, the Boge Estate argues, even though the federal interpleader action was first-filed, the interpleader action is not more "advanced" than its State Court Action. For similar reasons, the Boge Estate argues that the factors considered by Iowa courts do not favor a stay, and this court should respect the state court's decision not to stay the State Court Action as a matter of comity. The Boge Estate suggests that the different ruling of the state court on an unresisted motion to stay in the Geisinger Defendants' State Court Action is not as persuasive as the reasoned decision on a contested motion in its State Court Action.

Finally, the Boge Estate asserts that, in *Tashire*, the United States Supreme Court recognized that there are times, such as when the only dispute is over who is

entitled to the fund, when it makes sense to confine the litigation to a single forum, but it also recognized that, in circumstances more like those presented here, a plaintiff's right to choose the forum to establish its rights should not be stripped by an interpleader action. The Boge Estate argues that allowing the movants' insurance carrier to control the Boge Estate's claim against Progressive, and even the very nature of damages, through the limited funds deposited by the insurer, runs contrary to the intent and goals of federal interpleader actions as established by *Tashire*. Indeed, the Boge Estate argues that the goals of § 2361 can be satisfied by issuing an order restraining the Boge Estate (and other parties) from executing on any judgment against the fund that is the subject of this federal interpleader action without further order of this federal court.

### 3. *The movants' reply*

In their reply, the Moens Defendants and Cole Moens point out that five other defendants have now joined in their Motion To Enjoin State Court Action, making the Boge Estate the only party that is content to subject itself and others to a multiplicity of actions. The movants reiterate that there is no legal or factual justification for allowing an overlapping action to continue.

More specifically, the movants assert that the Boge Estate has failed to counter their contentions that allowing its State Court Action to continue would subject all parties to a multiplicity of actions and the possibility of inconsistent determinations. Indeed, they point out that all parties in this action have already been served with two different written reports by accident reconstruction experts retained by the Geisinger Defendants and GCC, respectively, suggesting substantially different opinions about causation, fault, and the effect of vehicle speeds in the accident, and that other parties to this interpleader action will necessarily be involved in the Boge Estate's State Court Action through subpoenas, depositions, and trial testimony. They also contend that the Boge Estate has conceded that § 2361 authorizes a restraint on the Boge Estate's State

24

Court Action, but does not authorize piecemeal restraint on the execution of judgments or any other distinct state court function.  The movants also assert that the status of this federal interpleader action as the first-filed action should not be ignored, nor should the fact that this action is more advanced than the Boge Estate suggests, and that § 2361 shows that there is a strong policy favoring enjoining the State Court Action.  The movants also argue that this interpleader action is for the purpose of equitably distributing the interpleaded funds, which necessarily involves the analysis of fault and causation for all parties involved, so that the fault determination is not "muddled," but clarified by bringing all claims into one action.  The movants also argue that there is no justification for giving any less weight to the stay order in the Geisinger Defendants' State Court Action than to the order denying a stay in the Boge Estate's State Court Action.  Rather, they argue that the state court made a fair assessment of the evidence in each case.

The movants reiterate that, by nature of the interpleader action, this court has the opportunity to make determinations after considering the full range of interests at stake, which is an opportunity that the court in the Boge Estate's State Court Action will not have.  They contend that the Boge Estate relies on Iowa's interest in allowing its citizens to choose their forum, but ignores that Buckeye, the interpleader plaintiff, did not file this motion; rather, the movants and the joining parties are citizens of Iowa. Additionally, they argue, granting a stay will not extinguish the Boge Estate's cause of action in its chosen forum.


### C.     Analysis

I find that my analysis need go little beyond the United States Supreme Court's decision in *Tashire*.  Indeed, I find that *Tashire* and its progeny provide clear guidance

on—if they do not in fact control—whether or not I should enjoin the Boge Estate's State Court Action.

### 1. *The teachings of* Tashire

The Supreme Court's decision in *State Farm Fire & Casualty Company v. Tashire*, 386 U.S. 523 (1967), for good or ill, is the last time that the Supreme Court considered when it is appropriate for a federal court hearing an interpleader action pursuant to § 1335 to enjoin state court actions pursuant to § 2361. Perhaps fortunately, that decision, like the one before me, was in a federal interpleader action arising after a motor vehicle accident—in *Tashire*, a collision between a pickup truck and a Greyhound bus, *Tashire*, 386 U.S. at 525—which, like this case, involved several parties and various claims of liability and fault.

In *Tashire*, the Court first concluded that an insurer is not required to wait until persons asserting claims against its insureds have reduced those claims to judgment before seeking to invoke the benefits of federal interpleader. *Id.* at 532. In so doing, it clarified the "problems posed by multiple claimants to a single fund" that the interpleader action was intended to preclude, *see id.* at 530:

> Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy.

*Tashire*, 386 U.S. at 533 (footnotes omitted).

In *Tashire*, however, the Court explained that the mere existence of an interpleader action is not enough to warrant a stay on all other actions pursuant to § 2361:

The fact that State Farm [the truck driver's insurer] had properly invoked the interpleader jurisdiction under § 1335 did not, however, entitle it to an order both enjoining prosecution of suits against it outside the confines of the interpleader proceeding and also extending such protection to its insured, the alleged tortfeasor [the truck driver]. Still less was Greyhound Lines [the bus company] entitled to have that order expanded so as to protect itself and its driver, also alleged to be tortfeasors, from suits brought by its passengers in various state or federal courts. Here, the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the 'fund,' the deposited proceeds of the insurance policy. In these circumstances, the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund.

*Tashire*, 386 U.S. at 533-34. In short, the mere fact of a federal interpleader action does not entitle the parties to that action to a stay on *any and all* other proceedings involving claims of liability.

The Court then identified the kinds of litigation that it would be proper to enjoin pursuant to § 2361:

There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation. In this context, the suits sought to be enjoined are squarely within the language of 28 U.S.C. s 2361, which provides in part:

> 'In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court *affecting the property, instrument or obligation involved in the interpleader action * * *.'* (Emphasis added.)

*Tashire*, 386 U.S. at 534 (footnote omitted). Thus, *Tashire* indicates, at least in *dicta*, that when the fund is the target of the entire litigation, a stay on other litigation pursuant to § 2361 is appropriate—but those were not the circumstances then before the Court.

On the other hand, the Court explained, there are kinds of litigation—such as the litigation then at issue—that should *not* be enjoined pursuant to § 2361:

> But the present case is another matter. Here, an accident has happened. Thirty-five passengers or their representatives have claims which they wish to press against a variety of defendants: the bus company, its driver, the owner of the truck, and the truck driver. *The circumstance that one of the prospective defendants happens to have an insurance policy is a fortuitous event which should not of itself shape the nature of the ensuing litigation.* For example, a resident of California, injured in California aboard a bus owned by a California corporation should not be forced to sue that corporation anywhere but in California simply because another prospective defendant carried an insurance policy. *And an insurance company whose maximum interest in the case cannot exceed $20,000 and who in fact asserts that it has no interest at all, should not be allowed to determine that dozens of tort plaintiffs must be compelled to press their claims—even those claims which are not against the insured and which in no event could be satisfied out of the meager insurance fund—in a single forum of the insurance company's choosing. There is nothing in the statutory scheme, and very little in the judicial and academic*

28

> *commentary upon that scheme, which requires that the tail*
> *be allowed to wag the dog in this fashion.*
>
> State Farm's interest in this case, which is the
> fulcrum of the interpleader procedure, is confined to its
> $20,000 fund. *That interest receives full vindication when*
> *the court restrains claimants from seeking to enforce against*
> *the insurance company any judgment obtained against its*
> *insured, except in the interpleader proceeding itself. To the*
> *extent that the District Court sought to control claimants'*
> *lawsuits against the insured and other alleged tortfeasors, it*
> *exceeded the powers granted to it by the statutory scheme.*

*Tashire*, 386 U.S. at 534-35 (emphasis added). Thus, the Court held that

circumstances in which a stay of other actions pursuant to § 2361 is *not* appropriate are

circumstances in which the fund is *not* the target of the entire litigation and cannot

satisfy all claims. Moreover, the Court recognized that, in such circumstances, the

appropriate exercise of the court's authority under § 236 is to enjoin only attempts by

the claimants to the fund to enforce any judgments against the fund, except through the

interpleader proceeding.

Finally, the Court in *Tashire* recognized the effect of its determination that a

federal court hearing an interpleader action can enjoin only a limited range of related

actions:

> *We recognize, of course, that our view of interpleader*
> *means that it cannot be used to solve all the vexing problems*
> *of multiparty litigation arising out of a mass tort. But*
> *interpleader was never intended to perform such a function,*
> *to be an all-purpose 'bill of peace.'* Had it been so intended,
> careful provision would necessarily have been made to
> insure that a party with little or no interest in the outcome of
> a complex controversy should not strip truly interested
> parties of substantial rights—such as the right to choose the
> forum in which to establish their claims, subject to generally
> applicable rules of jurisdiction, venue, service of process,
> removal, and change of venue. None of the legislative and

academic sponsors of a modern federal interpleader device viewed their accomplishment as a 'bill of peace,' capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought and into a single interpleader proceeding. And only in two reported instances has a federal interpleader court sought to control the underlying litigation against alleged tortfeasors as opposed to the allocation of a fund among successful tort plaintiffs. *See Commercial Union Insurance Co. of New York v. Adams*, 231 F.Supp. 860 (D.C. S.D. Ind. 1964) (where there was virtually no objection and where all of the basic tort suits would in any event have been prosecuted in the forum state), and *Pan American Fire & Casualty Co. v. Revere*, 188 F.Supp. 474 (D.C. E.D. La. 1960). Another district court, on the other hand, has recently held that it lacked statutory authority to enjoin suits against the alleged tortfeasor as opposed to proceedings against the fund itself. *Travelers Indemnity Co. v. Greyhound Lines, Inc.*, 260 F.Supp. 530 (D.C. W.D. La. 1966).

In light of the evidence that federal interpleader was not intended to serve the function of a 'bill of peace' in the context of multiparty litigation arising out of a mass tort, of the anomalous power which such a construction of the statute would give the stakeholder, and of the thrust of the statute and the purpose it was intended to serve, *we hold that the interpleader statute did not authorize the injunction entered in the present case. Upon remand, the injunction is to be modified consistently with this opinion.*

*Tashire*, 386 U.S. at 535-37 (emphasis added). Thus, the Court made clear that a federal interpleader action does not authorize consolidation of all related tort actions into a single action, which is in keeping with its recognition that interpleader is "broadly to remedy the problems posed by multiple claimants *to a single fund*," *id.* at 530 (emphasis added), not to remedy all problems of multiparty litigation in which rights to an identifiable fund may be one of several issues. *Id.* at 535-37.

## 2. *Application of* **Tashire**

### a. *The relationship between the interpleader and the other litigation*

Here, the fact that the Moens Defendants' insurer, Buckeye, properly brought a federal interpleader action—an issue no party is currently disputing—does not necessarily entitle either Buckeye or the Moens Defendants to protection from suits against either of them outside the confines of the interpleader proceeding. *Tashire*, 386 U.S. at 533-34. Also, here, there does not appear to be any dispute that the scope of the litigation, in terms of parties and claims, is more extensive than the confines of the "fund," consisting of the deposited proceeds of the "bodily injury" coverage under the Policy—notwithstanding that the "fund" here is considerably larger than the $20,000 at issue in *Tashire*, even considering the effects of more than four decades of inflation. *Cf. id.* In short, in the circumstances here, as in *Tashire*, "the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Id.*

Moreover, here, as in *Tashire*, several parties or their representatives wish to press claims against a variety of defendants: negligence and vicarious liability claims against Cole Moens and his parents, and Oldenkamp and his employer, as well as a claim by the Bailey Defendants for "underinsured motorist" coverage against their own insurer, United Fire, and a claim by the Boge Estate for "underinsured motorist" coverage against Gerald Boge's own insurer, Progressive. Thus, the circumstance that the Moens Defendants happen to have an insurance policy with Buckeye, the interpleader plaintiff, is a fortuitous event that should not itself shape the nature of the ensuing litigation. *Id.* at 534-35. Moreover, here, where Buckeye's maximum interest cannot exceed $500,000 and where it, in fact, asserts that it has no interest at all, that interest should not be allowed to determine that several tort plaintiffs must be

compelled to press their claims in a single forum of Buckeye's (or the Moens Defendants') choosing—indeed, this is certainly true of the claims that are *not* against Buckeye or its insureds, the Moens Defendants (and, by extension, Cole Moens), and where all claims, at least in aggregate, could not be satisfied out of the relatively more generous insurance fund representing the Policy limits for bodily injury. *Id.* at 535. Just as in *Tashire*, there is nothing in the statutory scheme that requires that "the tail be allowed to wag the dog in this fashion" in this case. *Id.* Where Buckeye's interest in the case, which is "the fulcrum of the interpleader procedure," is confined to its fund, that interest, here as in *Tashire*, "receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself," and to the extent that the Moens Defendants seek an order to control claimants' lawsuits against them and other alleged tortfeasors, such an order would exceed the power granted to this court by the statutory scheme. *Id.*

The Moens Defendants' and Cole Moens's attempts to distinguish *Tashire* are unavailing. Contrary to their contentions, *Tashire* did not turn on protection of claimants who were not subject to the personal jurisdiction of the interpleader court, but on the fact that, as in this case, the insurance carrier who brought the interpleader action did not have a sufficient stake in the liability determinations in a mass tort that involved damages well beyond the amount of the fund. *Id.* Also, contrary to the movants' assertions, while the Court in *Tashire* noted that some state court actions had been filed before the federal interpleader action, *id.* at 525-26, that fact did not figure at all in the Court's analysis of whether or not staying those actions was appropriate. *Id.* at 533-35. Furthermore, the Boge Estate's purported "consent" to a federal interpleader action to resolve questions about the equitable distribution of funds up to the Policy limits is, in no way, consent to try all of its liability claims in the same

proceeding. Finally, although the movants are correct that the Court in *Tashire* pointed out that—in *dicta*—a federal court could exercise jurisdiction over the entire litigation, as opposed to just the allocation of funds, in some circumstances, the Court then plainly identified circumstances in which that would be appropriate as circumstances, *not* present here, in which the interpleaded funds are the target of the entire litigation. *Id.* at 534. Furthermore, the Court even more plainly *held* that circumstances in which a federal court should *not* attempt to exercise jurisdiction over the entire litigation are circumstances like those presented here. *Id.* at 534-35.

### b. The relevance of judicial economy

The movants rely on the factors identified in *Shell Pipe Line*, 540 F. Supp. at 1163, as demonstrating that the interests of judicial economy will be served by staying the Boge Estate's State Court Action and requiring litigation of all liability claims arising from the August 11, 2010, accident in one proceeding. I note, first, that the court in *Shell Pipe Line* did not even identify the Supreme Court's decision in *Tashire* as relevant, let alone controlling, on the circumstances in which enjoining related lawsuits pursuant to § 2361 would be permissible or impermissible. Second, the Court made clear in *Tashire* that a federal interpleader action and the power to enjoin related actions are not driven by judicial economy, a desire to create an "all-purpose 'bill of peace,'" or the parties' convenience, but by the need to protect *the fund or property at issue* from the problems created by multiple claimants. *Tashire*, 386 U.S. at 530, 535-37. I am not unsympathetic to the movants' argument that consolidation of all actions related to the *accident* on August 11, 2010, not just related to the *distribution of funds up to one insurer's coverage limits*, into one action might serve the interests of judicial economy. "Nevertheless, that fact alone cannot compel the otherwise inappropriate joinder of claims in interpleader." *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1142 (8th Cir. 1976) (citing *Tashire*, 386 U.S. at 535-37). This limitation on the power of a

federal court hearing an interpleader action to enjoin the litigation of other cases follows from the observation of the Eighth Circuit Court of Appeals that interpleader is "'a remedy solely for the protection of the stakeholder.'" *Id.* (quoting *Great American Ins. Co. v. Bank of Bellevue*, 366 F.2d 289, 294 (8th Cir. 1966)).

The movants contend that the decision in *Tashire* did not overrule, or have the effect of overruling, two cases, cited by the Court, in which the district courts had exercised jurisdiction over the entire litigation, and that subsequent decisions have continued to provide authority for a liberal interpretation of the interpleader statute as permitting injunctions over all parties in litigation in non-mass tort circumstances. The part of the decision in *Tashire* citing the two district court cases, to which the movants refer, is the following:

> And *only in two reported instances* has a federal interpleader court sought to control the underlying litigation against alleged tortfeasors as opposed to the allocation of a fund among successful tort plaintiffs. *See Commercial Union Insurance Co. of New York v. Adams*, 231 F.Supp. 860 (D.C. S.D. Ind. 1964) (where there was virtually no objection and where all of the basic tort suits would in any event have been prosecuted in the forum state), and *Pan American Fire & Casualty Co. v. Revere*, 188 F.Supp. 474 (D.C. E.D. La. 1960).

*Tashire*, 386 U.S. at 536 (emphasis). This portion of the decision in *Tashire* simply does not stand as support for the power to grant the broad injunctive relief that the movants seek to protect *them*, as the tortfeasors or those liable for the actions of the tortfeasor, not just the fund represented by the limits on their insurance coverage.

First, the Court cited these two decisions as demonstrating that there was no general understanding that the power to restrain related cases under § 2361 extended to restraining all underlying litigation against a tortfeasor. Specifically, the Court had preceded the citation of these two district court decisions with observations about the

lack of support for an understanding of interpleader as "an all-purpose 'bill of peace'" in the language and structure of the statute and its legislative history. *Id.* at 535-36. The Court then contrasted the two district court decisions cited above with another:

> Another district court, on the other hand, has recently held that it lacked statutory authority to enjoin suits against the alleged tortfeasor as opposed to proceedings against the fund itself. *Travelers Indemnity Co. v. Greyhound Lines, Inc.*, 260 F.Supp. 530 (D.C. W.D. La. 1966).

*Tashire*, 386 U.S. at 536-37. Thus, the two district court decisions cited in *Tashire* were cited as outliers, not as representing the appropriate or general understanding of the scope of a district court's authority to enjoin other actions in a federal interpleader action.

Furthermore, contrary to the movants' reading, I believe that the Court's holding made clear that the two district court decisions to which they point were wrong. The Court held:

> In light of the evidence that federal interpleader was not intended to serve the function of a 'bill of peace' in the context of multiparty litigation arising out of a mass tort, of the anomalous power which such a construction of the statute would give the stakeholder, and of the thrust of the statute and the purpose it was intended to serve, *we hold that the interpleader statute did not authorize the injunction entered in the present case. Upon remand, the injunction is to be modified consistently with this opinion*.

*Tashire*, 386 U.S. at 537. The district court's injunction had "provided that all suits against Clark [the truck driver], State Farm [the interpleader plaintiff and insurer for Clark], Greyhound [owner of the bus], and Nauta [the bus driver] be prosecuted in the interpleader proceeding," *id.* at 528, and the Court held that it exceeded the district court's power under the statutory scheme "[t]o the extent that the District Court sought to control claimants' lawsuits against the insured and other alleged tortfeasors." *Id.* at

535. Thus, the modification required on remand was that the injunction only "restrain[ ] claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself," as that is the scope of an injunction that the Court determined was sufficient to provide "full vindication" of the insurer's interest, which was confined to its fund. *Id.* It is unclear to me how two decisions in which "a federal interpleader court sought to control [pursuant to § 2361] the underlying litigation against alleged tortfeasors as opposed to the allocation of a fund among successful tort plaintiffs" could stand, in light of the holding in *Tashire*.

Also, the way in which the movants contend that the *Commercial Union Insurance* case involved similar circumstances to the present case is that all of the basic tort suits would have to be—and so far, have been—prosecuted in this state. This overlooks the another salient circumstance in *Commercial Union Insurance*, which, according to the Supreme Court, was that "there was virtually no objection" to enjoining the other actions. *See Tashire*, 386 U.S. at 536 (explaining that, in the *Commercial Union Insurance* case, "there was virtually no objection and . . . all of the basic tort suits would in any event have been prosecuted in the forum state" (citing *Commercial Union Insurance Co.*, 231 F. Supp. 860)). Here, however, there is strong objection to such broad injunctive relief, not "virtually no objection," even if one assumes that all of the basic tort suits here would have to be prosecuted in Iowa, in any event.

The movants contend that, since *Tashire*, two other district courts have relied on liberal interpretation of the interpleader statute to provide authority to enjoin all parties in litigation in non-mass tort circumstances. The more recent of the two cases cited by the movants, *New York Life Ins. Co. v Apostolidis*, 841 F. Supp. 2d 711 (E.D.N.Y. 2012), simply does not fit their description. The movants contend that the court in

*Apostolidis* concluded that an injunction was necessary to protect parties from overlapping lawsuits in a non-mass-tort interpleader case that involved determination of a party's mental health state prior to death. The portion of the decision that they cite, 841 F. Supp. 2d at 719, however, relates to the court's conclusion that it need not transfer the interpleader action to the state probate court. In the part of that decision in which the court actually addressed the scope of its power to enjoin other litigation, the court granted the interpleader plaintiff, a life insurance company, a permanent injunction, because "a permanent injunction restraining the four Defendants from continuing or bringing any suits *against N.Y. Life with regard to the Death Benefits* at issue is necessary *to protect N.Y. Life* from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy." *Id*. at 720 (emphasis added). There was no request for, and no grant of, an injunction on other actions against an underlying tortfeasor insured by the interpleader plaintiff, and the imposition of an injunction limited to the interpleader's interest in the fund is entirely consistent with *Tashire*.

Similarly, in *Metropolitan Life Ins. Co. v. Harris*, 446 F. Supp. 936 (E.D. Wis. 1978), the earlier decision cited by the movants, it is not clear that any injunctive relief was granted that exceeded the limitations identified in *Tashire*, because the court only granted a permanent injunction "prohibiting the defendants from instituting or prosecuting any state or federal court action, other than the instant action, *affecting the proceeds of the insurance policy which is the subject of this action*." 446 F. Supp. 2d at 938 (emphasis added). An injunction on other actions "*affecting* the proceeds of the insurance policy which is the subject of this action" simply parallels the statutory language authorizing an injunction on "any proceeding in any State or United States court *affecting the property, instrument or obligation involved in the interpleader action*." 28 U.S.C. § 2361 (emphasis added). The decision in *Tashire* effectively construes actions "affecting" the property at issue in the interpleader as actions

concerning claims against the *fund*, that is, insurance proceeds, not claims against the alleged *tortfeasor* who is covered by the insurance policy. Certainly, the court in *Metropolitan Life Insurance* did not identify and enjoin any action against the interpleader plaintiff insurance company's insured for an alleged tort by the insured, where the insurance proceeds at issue, once again, were life insurance proceeds. *Id*. at 937.

On the other hand, federal courts have consistently recognized the difference, laid out in *Tashire*, between properly enjoining other actions related to insurance proceeds at issue in a federal interpleader action brought by an insurer, and improperly enjoining other actions related to the liability of the interpleader plaintiff's insured. *See, e.g.*, *Companion Property and Cas. Ins. Co. v. Boden*, No. 3:12–CV–00593–CRS, 2012 WL 6488751, *5 (W.D. Ky. Dec. 13, 2012) (slip op.) ("Protecting Companion's insureds through an order to restrain and enjoin the Defendants from proceeding against the insureds would exceed the power granted by Statutory Interpleader." (citing *Tashire*)); *Great West Cas. Co., Inc. v. Fredrics*, No. 1:10cv267, 2012 WL 3870496, *4 (W.D.N.C. Sept. 6, 2012) (slip op.) (explaining that its order restrained only actions against the res, but not actions against the insureds or other tortfeasors, and that "to the extent that the plaintiffs in the state court actions seek a recovery outside the limits of the interpleader fund, there is no restraint" (citing *Tashire*)); *New Hampshire Ins. Co. v. Xiao Ying Ma*, No. 11-5152 (SRC), 2012 WL 2476394, *4 (D.N.J. June 27, 2012) (slip op.) (refusing to enjoin actions against the insureds, because "this Court has ample resources to assure, as appropriate, that it retains exclusive power and control over the [interpleader] fund, and that it can do so without depriving the claimants of their valuable right to have the liability of the bus company, its driver, and other potential tortfeasors determined in the forum of [the claimants'] choice." (internal quotation marks and citations omitted)); *Indemnity Ins.*

*Co. of N. Am. v. Romagnoli*, No. 02 CIV.3073ISHS, 2002 WL 922170, *2 (S.D.N.Y. May 7, 2002) (slip op.) (granting an insurer's motion for an injunction, in part, but observing that "contrary to what Indemnity Insurance says, 28 U.S.C. § 2361 does not empower this Court to control the claimants' lawsuits against the insured and other alleged tortfeasors." (internal quotation marks and citations omitted)); *Mid–Am. Indem. Co. v. McMahan*, 666 F. Supp. 926, 929 (S.D. Miss. 1987) ("While injunctive relief is available to restrain actions affecting the fund, it is not available to enjoin prosecution of suits outside the bounds of the interpleader proceeding, a proscription which includes suits against the insured." (citing *Tashire*)). Indeed, I can find no cases to the contrary.

The movants are not entitled to an injunction on the Boge Estate's State Court Action against them.[8]

###### c.    *Authority for a more limited injunction*

The Boge Estate argues that, at most, the movants are entitled to an order restraining the Boge Estate (and other parties) from executing on any judgment against the fund that is the subject of this federal interpleader action without further order of this federal court. The movants reply that § 2361 authorizes a restraint on the Boge Estate's State Court Action, but does not authorize piecemeal restraint on the execution of judgments or any other distinct state court function. The movants are wrong. As noted above, the injunctive relief concerning other actions against the insured tortfeasor that the Supreme Court determined was permissible was an order "restrain[ing] the

---

[8] Because I find that *Tashire* and its progeny are fully dispositive of the movants' request for an order restraining the Boge Estate's State Court Action, I decline to examine the merits of the state court decisions granting a stay in one action and denying a stay in the other, or to independently consider what outcome might be suggested by the factors in *First Midwest Corp. v. Corp. Finance Assocs.*, 663 N.W.2d 888, 891 (Iowa 2003). Indeed, comity suggests that I should leave that issue well alone!

claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself." *Tashire*, 386 U.S. at 535 & 537 (remanding for modification of the district court's order to this extent). Thus, at most the movants—and more accurately, their insurer, Buckeye, the federal interpleader plaintiff—is entitled to an order "restrain[ing] the claimants from seeking to enforce against [Buckeye] any judgment obtained against [the Moens Defendants and/or Cole Moens], except in the interpleader proceeding itself." *Id.* Moreover, even if the decision in *Tashire* did not expressly authorize such injunctive relief against only execution of judgments in other actions against the interpleaded funds, except in the interpleader action, I believe that such injunctive relief is authorized by the portion of § 2361 authorizing the interpleader court to "make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361, second unnumbered paragraph.

Therefore, the movants are entitled only to an order restraining the claimants, including the Boge Estate, from seeking to enforce against Buckeye any judgment obtained against the Moens Defendants and/or Cole Moens, except in the interpleader proceeding itself.

### III. CONCLUSION

Upon the foregoing, the Moens Defendants' and Cole Moens's March 18, 2012, Motion To Enjoin State Court Proceedings (docket no. 87) is **granted in part and denied in part**, as follows:

1. The Motion is **granted**, to the extent that all claimants in this action, including the Boge Estate, are **hereby restrained** from seeking to enforce against Buckeye any judgment obtained against the Moens Defendants and/or Cole Moens, except in the interpleader proceeding itself; but

40

2.      The motion is **denied**, to the extent that it seeks to enjoin the Boge Estate's State Court Action.

**IT IS SO ORDERED**.

**DATED** this 13th day of May, 2013.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA